Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000141
25-FEB-2019
08:04 AM

NO. CAAP-16-0000141

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

KEAUHOU CANOE CLUB, A Hawaii Nonprofit Corporation,
Plaintiff-Appellee,
v.
DEPARTMENT OF LAND AND NATURAL RESOURCES, STATE OF HAWAI'I;
DIVISION OF BOATING AND OCEAN RECREATION OF THE
DEPARTMENT OF LAND AND NATURAL RESOURCES, STATE OF HAWAI'I;
SUZANNE CASE IN HER OFFICIAL CAPACITY AS CHAIRPERSON
OF THE BOARD OF LAND AND NATURAL RESOURCES, STATE OF HAWAI'I;
ED UNDERWOOD IN HIS OFFICIAL CAPACITY AS ADMINISTRATOR
OF THE DIVISION OF BOATING AND OCEAN RECREATION,
DEPARTMENT OF LAND AND NATURAL RESOURCES, STATE OF HAWAI'I;
AND DAVID Y. IGE IN HIS OFFICIAL CAPACITY AS
GOVERNOR OF THE STATE OF HAWAI'I,
Defendants-Appellants,[1]
and
JOHN DOES 1-100, JANE DOES 1-100, DOE CORPORATIONS 1-100,
DOE PARTNERSHIPS 1-100, and RICHARD ROES 1-100, ROE
CORPORATIONS 1-100, ROE PARTNERSHIPS 1-100, ROE ENTITIES 1-100,
Defendants.

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 13-1-678K)

MEMORANDUM OPINION
(By: Leonard, Presiding Judge, Reifurth and Chan, JJ.)

Defendants-Appellants, Department of Land and Natural
Resources et al. (collectively, State Defendants), appeal from

---

[1]     Pursuant to Hawai'i Rules of Appellate Procedure Rule 43(c)(1),
State of Hawai'i Board of Land and Natural Resources (BLNR) Chairperson
Suzanne Case was automatically substituted as a Defendant-Appellant in place
of former BLNR Chairperson William J. Aila, Jr.  David Y. Ige, the current
Governor of the State of Hawai'i was automatically substituted as a Defendant-
Appellant in place of former Governor Neil Abercrombie.

the: (1) Final Judgment, filed February 4, 2016; (2) Order Re: Declaration of Counsel in Support of Plaintiff's Attorneys' Fees and Costs, filed September 11, 2015; and (3) Order Granting Defendants' Motion for Summary Judgment; Granting Plaintiff's Motion for Attorney's Fees (Count IX), filed June 1, 2015, in the Circuit Court of the Third Circuit, State of Hawaiʻi (circuit court).[2]

This appeal arises from Plaintiff-Appellee Keauhou Canoe Club's (Keauhou) attempt to require the Department of Land and Natural Resources (DLNR) to conduct an environmental assessment prior to adding new mooring buoys in Keauhou Bay on the island of Hawaiʻi (moorings project). After filing a complaint and motion for summary judgment, Keauhou signed the Stipulation Re: Withdrawal of Plaintiff's Notice and Motion for Summary Judgment as to Counts I and VII Filed March 20, 2014 and Application of Chapter 343, HRS; Order (Stipulation) with State Defendants that requires State Defendants to conduct an environmental assessment pursuant to Chapter 343, Hawaii Revised Statutes (HRS). The circuit court, noting the Stipulation, entered a final judgment dismissing the case as to all counts in favor of Defendants, except as to Count IX of the First Amended Complaint (Complaint), filed January 3, 2014. Count IX of the Complaint requested attorney fees and costs under the private attorney general doctrine. The circuit court entered judgment on Count IX in favor of Keauhou, awarding Keauhou $9,252.00, plus judgment interest, and $666.58 in costs.

On appeal, State Defendants contend that the circuit court: (1) erred in awarding attorneys' fees and costs to Keauhou because (a) State Defendants were the prevailing party when the case was dismissed, (b) the complaint was filed prematurely and there was no alteration of the legal relationship between the parties, (c) Keauhou was not entitled to an award of attorneys' fees under the private attorney general doctrine, and (d) almost all of the claims were dismissed based on ripeness rather than on the Stipulation; and (2) erred in awarding costs and post-

---

[2]     The Honorable Judge Ronald Ibarra presided.

judgment interest against State Defendants without a valid legal basis.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve State Defendants' points on appeal as follows:

## I. Keauhou Is Entitled to Attorneys' Fees under the Private Attorney General Doctrine

We first address State Defendants' argument, that Keauhou is not entitled to attorneys' fees under the private attorney general doctrine. We apply the long-held rule that this court reviews a lower court's award of attorneys' fees and costs for abuse of discretion. Allstate Ins. Co. v. Pruett, 118 Hawai'i 174, 179, 186 P.3d 609, 614 (2008)(citation omitted).

> "The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Id. (quoting Lepere v. United Pub. Workers, 77 Hawai'i 471, 473, 887 P.2d 1029, 1031 (1995)). In other words, "[a]n abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Id. (quoting TSA Int'l Ltd. v. Shimizu Corp., 92 Hawai'i 243, 253, 990 P.2d 713, 723 (1999)).

Hart v. Ticor Title Ins. Co., 126 Hawai'i 448, 455, 272 P.3d 1215, 1222 (2012)(brackets in original).

The circuit court granted Keauhou attorneys' fees and costs under the private attorney general doctrine by entering judgment in favor of Plaintiff and against Defendants as to Count IX of the Complaint.[3] According to the Supreme Court of Hawai'i, the private attorney general doctrine is an equitable exception to the "American Rule" and thus "allows courts in their discretion to award attorneys' fees to plaintiffs who have 'vindicated important public rights.'" Kaleikini v. Yoshioka, 129 Hawai'i 454, 462, 304 P.3d 252, 260 (2013) (quoting In re

---

[3]     Count IX of the Complaint reads in its substantive entirety:

"Plaintiff KCC's attorneys should be permitted to recoup its attorneys' fees and costs pursuant to the private attorney general doctrine and Sierra Club v. Department of Transportation State of Hawai'i, 2009, 202 P.3d 1226, 120 Hawai'i 181."

Water Use Permit Applications (Waiahole II), 96 Hawai'i 27, 29, 25 P.3d 802, 804 (2001)). In evaluating claims under the private attorney general doctrine, we follow the Supreme Court of Hawai'i in:

> retain[ing] the abuse of discretion standard, noting however that we review de novo whether the trial court disregarded rules or principles of law that arise in deciding whether or not a party satisfies the three factors of the private attorney general doctrine.

Honolulu Constr. & Draying Co., Ltd., v. State, Dep't of Land & Nat. Res., 130 Hawai'i 306, 313, 310 P.3d 301, 308 (2013).

In determining whether the private attorney general doctrine applies, the courts consider three "basic factors": "(1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, [and] (3) the number of people standing to benefit from the decision." Kaleikini, 129 Hawai'i at 462, 304 P.3d at 260 (quoting Sierra Club v. Dep't of Transp., 120 Hawai'i 181, 218, 202 P.3d 1226, 1263 (2009)).

State Defendants contend on appeal that Keauhou's actions do not meet either the first or second elements of the private attorney general doctrine. First, State Defendants contend that Keauhou's Complaint could not "vindicate" any public rights because those rights were not at risk. Second, State Defendants contend that there was no "necessity for private enforcement" because there was no contrary decision by the government and the government did not "completely abandon" or "actively oppose" the plaintiff's cause. Waiahole II, 96 Hawai'i at 31, 25 P.3d at 806.

We take each element of the private attorney general doctrine in turn.

**A.      Vindication of Public Rights**

State Defendants do not challenge the "strength or societal importance of the public policy" on appeal, rather, they contend that such rights were not in need of "vindication." The vindication component of the first prong of the private attorney general doctrine is a mere restatement of the second prong of the private attorney general doctrine--whether there existed a

4

"necessity for private enforcement"--and will be addressed as such. In regards to the first prong, we follow the Supreme Court of Hawai'i in recognizing the societal importance of conducting environmental assessments, the societal importance of clarifying the procedural necessities related to the conduct of environmental assessments, and the societal importance of protecting native Hawaiian cultural heritage. Kaleikini, 129 Hawai'i at 463-64, 304 P.3d at 261-62.

### B.    Necessity of Private Enforcement

State Defendants' main contention is that this case does not meet the second prong of the private attorney general doctrine as there was no "necessity for private enforcement." Specifically, State Defendants contend that: (1) the decision to conduct an environmental assessment was voluntary and completely independent of the lawsuit filed by Keauhou; (2) BLNR never made a final decision on the environmental assessment itself and there was a "distinct possibility" it would have required an environmental assessment; and (3) the Army Corps of Engineers would sufficiently carry out the responsibilities associated with an environmental assessment.

As stated by the Hawai'i Supreme Court in 2001, fulfillment of the second prong of the private attorney general doctrine requires proving that the "government either completely abandoned, or actively opposed, [the plaintiff's] cause." Waiahole II, 96 Hawai'i at 31, 25 P.3d at 806.

In addressing this matter, a brief review of the time-line is instructive. Keauhou was notified on October 22, 2013, via government email from an engineer at the Division of Boating and Ocean Recreation (DOBOR), a division of DLNR, that the moorings project was exempt from conducting an environmental assessment. On December 19, 2013, the Administrator of DOBOR, Edward R. Underwood, addressed a letter to Keauhou on DLNR stationery stating that, while the moorings project permits were still under review, DOBOR was moving forward with permitting for the moorings project and DLNR was explicitly exempt from conducting an Environmental Assessment for the moorings project. On December 23, 2013, Keauhou filed its complaint. On January 3,

2014, Keauhou amended its complaint to include Administrator Underwood's official statements from the December 19, 2013, letter.

On March 20, 2014, Keauhou filed a motion for summary judgment requesting injunctive relief to force State Defendants to conduct an environmental assessment. The hearing on Keauhou's motion for summary judgment was scheduled for May 20, 2014, and amended to occur on May 21, 2014. On April 4, 2014, State Defendants filed their answer to the Amended Complaint. On April 14, 2014, State Defendants filed an amended answer to the Amended Complaint. On April 17, 2014, the Administrator of DOBOR submitted a request asking BLNR to find that the moorings project is exempt from Chapter 343 during BLNR's next meeting on April 25, 2014. On April 24, 2014, an email exchange between the attorneys for Keauhou and State Defendants stated that the request made by the Administrator of DOBOR was being withdrawn from consideration by BLNR and that State Defendants would proceed with an environmental assessment.

On May 13, 2014, State Defendants filed their opposition to Keauhou's motion for summary judgment, stating that State Defendants had "clearly and unequivocally communicated to Plaintiff's counsel since the filing of the Complaint that the Keauhou Bay Project will not proceed without an EA." The only evidence presented by State Defendants of these "clear[] and unequivocal[]" communications are two signed declarations. The first, signed by Deputy Attorney General Daniel A. Morris, merely states: "I have informed Plaintiff's counsel on more than one occasion that the State will not proceed with the Keauhou Bay Project without first completing an environmental assessment pursuant to Chapter 343, Hawaii Revised Statutes." The second, signed by Edward R. Underwood, Administrator of DOBOR, merely states: "The Keauhou Bay Project will not proceed before an Environmental Assessment is prepared pursuant to Chapter 343, Hawaii Revised Statutes." On May 21, 2014, Keauhou filed the Stipulation, signed by both parties. The Stipulation states that State Defendants will complete an environmental assessment before proceeding with the moorings project, and, as a consequence, the

Stipulation withdrew Keauhou's motion for summary judgment.

State Defendants first contend that the decision to conduct the environmental assessment was completely voluntary and independent of the lawsuit filed by Keauhou, thus no public right was in need of vindication by Keauhou. This interpretation of events is flatly contradicted by the State Defendants' actions in signing the Stipulation that required the conduct of an environmental assessment in exchange for Keauhou's withdrawal of its own motion for summary judgment. The Stipulation was given the force of an order by the circuit court in its Final Judgment, and referenced as the cause for the circuit court's decision in the Order Granting Defendant's Motion for Summary Judgment; Granting Plaintiff's Motion for Attorney's Fees (Count IX).

In fact, Keauhou explicitly raised this as a potential issue in the April 7, 2015 hearing on the motions for summary judgment. At the hearing, the circuit court granted Keauhou's request to give the Stipulation the force of a court order:

> Mr. Olson: . . . . Keauhou Canoe Club is forced to file suit, and this issue is ripe. And the state has waived any argument about ripeness, Your Honor, by signing the stipulation. If they -- if we were supposed to buy the state's position, they should have said, you know, we don't need to sign the stipulation, we're gonna proceed as -- as we want. They knew they were in trouble. They knew they hadn't done this properly, and that's why they did this after we filed our motion for summary judgment.
>
> The Court: Okay. On the first issue, uh, the court finds that the stipulation is a -- an order approved by the court and binding. I don't hear the attorney general saying it's not binding upon the state, is that correct?
>
> Mr. Morris: That's correct, Your Honor.
>
> The Court: And it is an order of the court that, uh, the state, uh agreed to pursue an EA, uh, prior to beginning of the project and, uh, so as to -- to that extent, the motion filed by the state is granted.
> So the next issue is whether or not there should be attorney's fees pursuant to the private attorney general doctrine. And -- and the court is concerned that what prompted the state to enter into the stipulation, the argument is basically the filing of the lawsuit. And, uh, I will look at that more carefully.
>
> . . . .
>
> The Court: I'm going to look at it again. As far as the attorney's fees on the private attorney general. But as far as the, uh, state's motion for judgment on the pleadings, so in the alternative for summary judgment, this basically, to the extent of the, uh, count one, was it, the EA, the court finds it a stipulation. It's signed by the parties, and

7

ordered by the court. So, the issue regarding count one has been addressed.

It is clear from the transcript, the Final Judgment, and the Order Granting Defendant's Motion for Summary Judgment; Granting Plaintiff's Motion for Attorney's Fees (Count IX) that State Defendants' decision to sign the Stipulation requiring an environmental assessment was part of a *quid pro quo* deal that was further given the force of law by a court order. The circuit court explicitly accepted the Stipulation in lieu of granting declaratory relief against State Defendants as requested in Count I of the Complaint.

State Defendants additionally contend that BLNR never made a final decision on the environmental assessment itself and there was a "distinct possibility" it would have required an environmental assessment. The official statements from the head of DOBOR clearly constitute an initial refusal by the State to conduct the environmental assessment, a refusal that continued at least through the April 17, 2014 request to BLNR to find that the moorings project is exempt (a request made after State Defendants filed both the original and amended answers to Keauhou's Amended Complaint). There is no evidence in the record of any official statement by any State Defendant, prior to the filing of the complaint, stating that State Defendants would conduct an environmental assessment. The Stipulation further confirms the causal relationship between Keauhou's lawsuit and State Defendants' decision to conduct the environmental assessment. Thus, it was not an abuse of discretion for the circuit court to find that the statements by DOBOR and DLNR officials bound the State and necessitated private enforcement.

State Defendants finally contend that there was no necessity for private enforcement because the Army Corps of Engineers would "sufficiently carry out the responsibilities associated with an [environmental assessment]." State Defendants rely on Hawaiʻi Supreme Court's holding in <u>Maui Tomorrow v. State</u>, 110 Hawaiʻi 234, 245, 131 P.3d 517, 528 (2006), that a state agency does not completely abandon or actively oppose its duty if it believes, even erroneously, that such duty was to be carried out by another state agency. This case is easily

8

distinguishable from the present instance. In <u>Maui Tomorrow</u>, BLNR mistakenly believed that the Commission on Water Resource Management, a companion *state* organization within DLNR and with *identical statutory obligations*, was responsible for conducting the environmental assessment. The supreme court found that the state did not "completely abandon" or "actively oppose" the plaintiff's cause because, despite errors in implementation, the state still assumed that some part of itself had a duty to perform the environmental assessment. Here, State Defendants assumed that a *federal* entity would perform actions "[s]imilar to what is done through the EA process." It cannot be said that this assumption in any way relieved State Defendants of the need to fulfill their own statutory duties. State Defendants refused to conduct the required environmental assessment themselves, and State Defendants' reliance on an external entity to conduct a hypothetically "similar" process constitutes complete abandonment and active opposition to the plaintiff's cause.

Therefore, it was not an abuse of discretion for the circuit court to find that State Defendants' actions created a "necessity for private enforcement" in fulfillment of the second prong of the private attorney general doctrine.

## C.    The Number of People Standing to Benefit

State Defendants do not challenge the third prong of the private attorney general doctrine on appeal - a consideration of the "number of people standing to benefit from the decision." In this case, similar to the holding in <u>Sierra Club</u>, 120 Hawaiʻi at 221, 202 P.3d at 1266, Keauhou's action: addressed questions of "generally applicable law that established procedural standing in environmental law" for decisions made by DLNR, clarified that DLNR and BLNR cannot outsource their own statutory duties under HRS Chapter 343 to non-state actors, and accordingly will "benefit large numbers of people over long periods of time." Thus, it was not an abuse of discretion for the circuit court to find that the present case appropriately satisfies the third prong of the private attorney general doctrine.

As all three elements of the private attorney doctrine are met in this case, the circuit court did not abuse its

discretion in awarding attorneys' fees to Keauhou under the private attorney general doctrine when it granted Count IX of the Amended Complaint.

## II. The Private Attorney General Doctrine Does Not Require Keauhou to be the "Prevailing Party"

We next turn to State Defendants' other points of error--collectively based on the proposition that the circuit court erred in awarding attorneys' fees and costs to Keauhou because Keauhou was not the "prevailing party." State Defendants contend that Keauhou is not the prevailing party because: (1) the case was dismissed and the defendant (State Defendants) is the prevailing party in a dismissal; (2) the case was filed too early and thus the judgment did not create a "material alteration of the legal relationship between the parties," pursuant to Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 604 (2001); and (3) the claims were dismissed based on ripeness.

The Supreme Court of Hawai'i addressed the private attorney general doctrine in detail in 2013, holding explicitly that "the private attorney general doctrine does not require that a plaintiff receive a final judgment in his or her favor before fees may be awarded." Kaleikini, 129 Hawai'i at 462, 304 P.3d at 260.

> Normally, pursuant to the "American Rule," each party is responsible for paying his or her own litigation expenses. This general rule, however, is subject to a number of exceptions: attorney's fees are chargeable against the opposing party when so authorized by statute, rule of court, agreement, stipulation, or precedent. This court has [also] recognized a number of equitable exceptions to the "American Rule." One such exception is provided by the private attorney general doctrine, which is an equitable rule that allows courts in their discretion to award attorneys' fees to plaintiffs who have "vindicated important public rights."

Id., (citations and some internal quotations omitted).

The question of whether Keauhou is the "prevailing party" is not one of the elements of the private attorney general doctrine and is thus inapposite to the award of attorneys' fees in this case. In Maui Tomorrow, the Supreme Court of Hawai'i held that the plaintiff was not the prevailing party and was not entitled to attorneys' fees and costs as the prevailing party, but the Supreme Court still considered whether the plaintiff

10

might be entitled to attorneys' fees under the equitable rule of the private attorney general doctrine. See Maui Tomorrow, 110 Hawai'i at 244, 131 P.3d at 527.

Thus, following the Supreme Court of Hawai'i, so long as "all three prongs of the private attorney general doctrine have been satisfied in the instant case," Kaleikini, 129 Hawai'i at 462, 304 P.3d at 260, it was not an abuse of discretion for the lower court to award attorneys' fees to Keauhou regardless of Keauhou's status as a "prevailing party."

## III. Costs and Post-Judgment Interest

In their final point of error, State Defendants contend that the circuit court erred in awarding costs and post-judgment interest against State Defendants because: (A) the private attorney general doctrine does not authorize an award of costs when the private party is not held to be the prevailing party, and (B) post-judgment interest cannot be awarded against the state or state officials due to sovereign immunity.

### A. Keauhou May Collect Costs under the Private Attorney General Doctrine

Regarding an award of costs under the private attorney general doctrine, State Defendants concede in their opening brief that an award of costs in this case is not barred by sovereign immunity under the Hawai'i Supreme Court's precedent established in Sierra Club. Instead of relying on sovereign immunity, State Defendants contend that the private attorney general doctrine only supports an award of attorneys' fees, and costs must be awarded under a separate legal authority. State Defendants' only case in support of this proposition is a Supreme Court of Hawai'i decision holding Sierra Club to be the prevailing party and awarding costs accordingly under Hawai'i Rules of Civil Procedure (HRCP) Rule 54(d)(1).[4] Sierra Club, 120 Hawai'i at 222-25, 202

---

[4]     HRCP Rule 54(d)(1) provides:

Rule 54.     JUDGMENTS: COSTS; ATTORNEYS' FEES.
(d) Costs; attorneys' fees.
(1) COSTS OTHER THAN ATTORNEYS' FEES. Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the State or a county, or an officer or agency of the State or a county, shall be imposed only to the extent permitted

P.3d at 1267-70. In response, Keauhou relies on a statement in the same case to support the proposition that the private attorney general doctrine supports an award of costs:

> As established in the prior sections herein, however, we have concluded that: (1) HRS § 607-25 is not the exclusive means for awarding attorney's fees and costs for litigation involving violations of HRS chapter 343; and (2) the facts of this case satisfy each of the three prongs of the private attorney general doctrine.

Id. at 225, 202 P.3d at 1270.

The Supreme Court of Hawai'i first acknowledged the potential applicability of the private attorney general doctrine in Hawai'i in 2001 and first used the doctrine to grant attorneys' fees in 2009. Id. at 218-19, 202 P.3d at 1263. Since 2009, Hawai'i appellate courts have applied the private attorney general doctrine, and thus reached the question of fees and costs, in only a few cases.

Reviewing the Hawai'i Supreme Court's decision in favor of Sierra Club reveals a certain ambiguity in the use of the phrase "attorneys' fees and costs" throughout the opinion. In the final accounting, however, the court only awarded attorneys' fees under the private attorney general doctrine. The court explicitly awarded costs "pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 54(d)(1) and HRS § 607-24"[5] because Sierra

---

by law. Costs may be taxed by the clerk on 48 hours' notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.

[5] HRS § 607-24 (2016) provides:

§ 607-24 **No bonds or costs to be filed or paid by government.** Neither the State nor any county or any political subdivision, board, or commission thereof, nor any officer, acting in the officer's official capacity on behalf of the State or any county or other political subdivision, board, or commission thereof, shall be taxed costs or required to pay or make any deposit for the same or file any bond in any case whether for costs, on motion for new trial, or on appeal, or for any other purpose whatsoever. In all cases in which a final judgment or decree is obtained against the State, county, or other political subdivision or any board or commission thereof, any and all deposits for costs made by the prevailing party shall be returned to the prevailing party, and the prevailing party shall be reimbursed by the State, county, or other political subdivision, board, or commission thereof, as the case may be, all actual disbursements, not including attorney's fees or commissions, made by the prevailing party and approved by the court.

Club was the "prevailing party." Id. at 230 n.31, 202 P.3d at 1275 n.31.

The ambiguous use of the phrase "attorneys' fees and costs," and its frequent interchangeability with either of its constituent parts, appears to be a consistent practice, even in those cases attempting to distinguish between the two. See, e.g., Fought & Co., Inc. v. Steel Eng'g & Erection, Inc., 87 Hawaiʻi 37, 951 P.2d 487 (1998). In many cases, despite the ambiguous language, attorneys' fees are ordered under the private attorney general doctrine and costs are separately ordered under HRCP Rule 54(d)(1) and/or HRS § 607-24. See Gold Coast Neighborhood Assoc. v. State, 140 Hawaiʻi 437, 466-67, 403 P.3d 214, 243-44 (2017); Kaleikini, 129 Hawaiʻi at 469 n.14, 304 P.3d at 267 n.14; Babson v. Nago, No. CAAP-10-0000007, 2014 WL 4648167, at *10 n.11 (Haw. App. Sept. 17, 2014) (Mem. Op.).

However, these examples do not state that the private attorney general doctrine does not extend to an award of costs, and not all successful private attorney general doctrine cases in Hawaiʻi distinguish between costs and attorneys' fees. In 2013, the Supreme Court of Hawaiʻi affirmed that the Land Court appropriately awarded attorneys' fees and costs under the private attorney general doctrine, overturning this court's decision that the plaintiffs did not meet the three prongs of the private attorney general doctrine. See Honolulu Constr. & Draying Co., Ltd., 130 Hawaiʻi 306, 310 P.3d 301 (2013) rev'g In re Honolulu Constr. & Draying Co., Ltd. v. State, 129 Hawaiʻi 68, 71, 293 P.3d 141, 144 (App. 2012) (Intermediate Court of Appeals reversed a trial court award under the private attorney general doctrine, "inclusive of fees and costs").

In another case in 2013, this court, by order, granted separate attorneys' fees ($31,225) and costs ($365) pursuant to the private attorney general doctrine. That order was overturned in an unpublished opinion by the Supreme Court of Hawaiʻi only insofar as the State had not waived its sovereign immunity under the statute at issue in that case. The order was affirmed as to the non-state defendants. Hall v. Dep't of Land & Nat. Res., No. SCWC-12-0000061, 2013 WL 6271902, at *1, *3 (Haw. Dec. 4, 2013)

13

(Mem. Op.).

There then seem to be a number of valid foundations for an award of costs in relation to a successful application of the private attorney general doctrine. Costs may be awarded as a precedential exception to the "American Rule," following the cases just discussed which applied the private attorney general doctrine to both attorneys' fees and costs. See Fought, 87 Hawaiʻi at 51, 951 P.2d at 501 (precedent is a valid exception to the "American Rule"). Costs may be awarded using the courts' inherent power under HRS § 602-5 to fashion equitable remedies, including the granting of costs, so long as such grant does not violate the state's sovereign immunity or other statute. In this case, sovereign immunity is clearly waived through HRS § 661-1(1) (1993) and HRS § 343-7(a).[6] Sierra Club, 120 Hawaiʻi at 229, 202 P.3d at 1274. Costs may be awarded under HRCP Rule 54(d)(1) and/or HRS § 607-24, if the party who successfully asserts the

---

[6]    HRS § 661-1(1) (1993) provides:

§ 661-1 Jurisdiction. The several circuit courts of the State and, except as otherwise provided by statute or rule, the several state district courts shall, subject to appeal as provided by law, have original jurisdiction to hear and determine the following matters, and, unless otherwise provided by law, shall determine all questions of fact involved without the intervention of a jury.
       (1) All claims against the State founded upon any statute of the State; or upon any regulation of an executive department; or upon any contract, expressed or implied, with the State, and all claims which may be referred to any such court by the legislature; provided that no action shall be maintained, nor shall any process issue against the State, based on any contract or any act of any state officer which the officer is not authorized to make or do by the laws of the State, nor upon any other cause of action than as herein set forth.

HRS § 343-7(a) (2010) provides:

Limitation of actions. (a) Any judicial proceeding, the subject of which is the lack of assessment required under section 343-5, shall be initiated within one hundred twenty days of the agency's decision to carry out or approve the action, or, if a proposed action is undertaken without a formal determination by the agency that a statement is or is not required, a judicial proceeding shall be instituted within one hundred twenty days after the proposed action is started. The council or office, any agency responsible for approval of the action, or the applicant shall be adjudged an aggrieved party for the purposes of bringing judicial action under this subsection. Others, by court action, may be adjudged aggrieved.

private attorney general doctrine is also the "prevailing party." Id. at 230, 202 P.3d at 1275.

In this case, the circuit court based its award of attorneys' fees and costs on Count IX of the complaint, the private attorney general doctrine. Reviewed for an abuse of discretion in the context of the above discussion, it cannot be said that the circuit court "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice" in granting costs to Keauhou on such basis. Thus, we affirm the award of costs under the private attorney general doctrine.

B.    **Sovereign Immunity Bars Keauhou's Award of Post-Judgment Interest**

State Defendants contend that the award of post-judgment interest is barred by sovereign immunity. We note initially that issues of sovereign immunity are a matter of subject matter jurisdiction and may be raised for the first time on appeal, as in this case. Kahoʻohanohano v. Depʻt of Human Servs., State of Haw., 117 Hawaiʻi 262, 281, 178 P.3d 538, 557 (2008).

In 2005, the Supreme Court of Hawaiʻi held that,

> notwithstanding our holding in Fought that, pursuant to HRS § 661-1, . . ., the State has waived immunity to suits based on contract claims, HRS § 478-3 does *not* expressly waive the State's immunity from postjudgment interest. . . . In fact, there is *no statutory authority* that expressly relinquishes the State's immunity from postjudgment interest with respect to claims for relief predicated upon HRS § 661-1.

Chun v. Bd. of Trs. of Emps.' Ret. Sys. of State of Hawaiʻi, 106 Hawaiʻi 416, 433, 106 P.3d 339, 356 (2005) (emphasis in original) (citing Fought, 87 Hawaiʻi 37, 951 P.2d 487). In Sierra Club, the Supreme Court of Hawaiʻi followed this reasoning in finding a waiver of sovereign immunity: "'[w]hen the [S]tate has consented to be sued, its liability is to be judged under the same principles as those governing the liability of private parties.' In this case, . . . there has been a clear waiver of the State's sovereign immunity from suit through HRS § 661-1(1) and HRS § 343-7." Sierra Club, 120 Hawaiʻi at 229, 202 P.3d at 1274 (citing Fought, 87 Hawaiʻi at 56, 951 P.2d at 506).

The Sierra Club court appears to state a broader waiver of sovereign immunity, to the extent that the Department of

Transportation was to be treated for the purposes of attorneys' fees and costs, as damages, in the same way as its private party co-defendant. However, the Sierra Club court did not find an explicit, additional waiver of sovereign immunity with regards to post-judgment interest in HRS § 661-1(1) and HRS § 343-7 as required by the Chun court. Absent such an explicit waiver of sovereign immunity in regards to post-judgment interest, it was an abuse of discretion for the circuit court to award post-judgment interest in favor of Keauhou.

Therefore, IT IS HEREBY ORDERED that the: (1) Final Judgment, filed February 4, 2016; (2) Order Re: Declaration of Counsel in Support of Plaintiff's Attorneys' Fees and Costs, filed September 11, 2015; and (3) Order Granting Defendants' Motion for Summary Judgment; Granting Plaintiff's Motion for Attorney's Fees (Count IX), filed June 1, 2015, are AFFIRMED as to the attorneys' fees ($9,252.00) and costs ($666.58) granted in favor of Keauhou and against State Defendants and REVERSED as to the post-judgment interest at the rate of 10% per annum on the attorneys' fees against State Defendants.

DATED: Honolulu, Hawai‘i, February 25, 2019.

On the briefs:

Robert T. Nakatsuji,
Deputy Solicitor General,
for Defendants-Appellants.

Peter S.R. Olson,
(Olson & Sons),
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

16